## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.:08-CV-00391-JLK-KMT

THE NEW SALIDA DITCH COMPANY, INC., a Colorado Corporation

**Plaintiff**

v.

UNITED FIRE & CASUALTY INSURANCE COMPANY, an Iowa Corporation

**Defendant**

_____

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF THE DUTY TO DEFEND AND LIABILITY FOR BREACH OF CONTRACT AND BAD FAITH

_____

Plaintiff New Salida Ditch Company, Inc., ("New Salida"), by and through its counsel Grimshaw & Harring, P.C., and pursuant to Rule 56, Colo.R.Civ.P., submits the following Brief in Support of its Response to Defendant United Fire & Casualty Insurance Company's ("United Fire") Motion for Summary Judgment and Cross Motion for Summary Judgment on the Issue of the Duty to Defend and Liability for Breach of Contract and Bad Faith.

## INTRODUCTION

United Fire issued a commercial general liability ("CGL") contract of insurance to New Salida as the named insured on April 4, 2000. (*See* **Exhibit A** to Defendant's Motion for Summary Judgment). That policy was in effect through the relevant periods at issue in this action. The CGL policy contained a duty to defend and a duty to indemnify covering New Salida for its activities and operations. It is undisputed that New Salida has been sent orders from various federal government agencies requiring it to engage in corrective action to remediate

damage allegedly caused to the Arkansas River as a result of dirt, rock and fill material coming into contact with the River ("Underlying Actions"). (*See* Complaint, and attachments thereto, Exhibit A, B (especially the Army Corp of Engineers orders on page 1, subparagraphs a, b and c[1]), C, D, E (especially page 1 bottom and page 2 top[2]), F (especially page 1 bottom, page 2 top[3] and the Cease and Desist Order attached thereto)).

On February 25, 2008, New Salida filed this action alleging that United Fire wrongfully denied coverage as required by the CGL policy. Specifically, United Fire has unreasonably refused to defend against the various Underlying Actions, refusal of which constitutes a bad faith breach of its CGL policy. Because United Fire must act in good faith to provide coverage pursuant to the CGL policy, United Fire has breached and continues to breach this duty every day that it does not defend, or pay for defense costs, and otherwise provide coverage in accordance with the policy. (*See* Pending Motion to Amend Complaint).

---

[1] The Order explains that: "Federal regulations 33 CFR 326.3(e)(2) describe final corrective actions. In accordance with the regulations, the Corps herby orders the following final corrective actions to be completed no later than April 7, 2006.
a.  Remove all fills placed below the ordinary high water mark of the Arkansas River back to the original bankline.
b.  Stabilize exposed riverbank slopes with erosion control blankets.
c.  Construct a berm along the top of the bank to prevent stormwater runoff down the bank.
Should the New Salida Ditch Company fail to implement and complete these final corrective actions by April 7, 2006, the Corps will forward its file to the U.S. Environmental Protection Agent for enforcement action."
[2] "The removal of the fill must be done immediately, or some interim measures taken to temporarily stabilize the fill prior to spring floods to allow planning for the ultimate removal of fill material.  Any other alternative is unacceptable because it will allow impacts to the Arkansas River that will take years, if not decades to remedy. As such, EPA strongly recommends that the Corps utilize its authority under 33 CFR Part 326.3(d), *Initial Corrective Measures*, to require the immediate removal of the fill material prior to spring run off in order to minimize environmental harm and downstream property damage."
[3] "This action could result in the imposition of civil penalties.  The Division is authorized pursuant to §25-8-608, C.R.S. to impose a penality of $10,000 per day for each day during which such violation occurs.  Please be advised that the Division is continuing its investigation into this matter and the Division may identify supplementary violations that warrant amendments to this Order or the issuance of additional enforcement actions. **Within (5) calendar days of your receipt of this Order, the Division requests New Salida Ditch Company to submit a written response outlining New Salida Ditch Company's intentions to comply with the conditions of the Order. If New Salida Ditch Company does not respond, or if the response indicates that New Salida Ditch Company is not willing to comply with the Order, the Division intends to utilize its authority to seek judicial intervention as outlined in §25-8-607 C.R.S.**

On April 6, 2009, United Fire filed a Motion for Summary Judgment arguing that the Court should find that dirt, rock and fill material constitute "pollutants" under the relevant CGL policy. *See* (Def. Mot. S.J., dkt# 53). In response, New Salida files the within Cross Motion for Summary Judgment on the Issue of Liability asking the Court to find that dirt, rock and fill material do not constitute "pollutants" *under the plain language of the policy*. As a consequence, New Salida has breached its duty to defend and acted unreasonable and in bad faith. Because the plain language of the policy does not define dirt, rock or fill materials as "pollutants," United Fire has no basis for refusing to defend against the Underlying Actions. Therefore, summary judgment is proper on the issue of liability as to United Fire's duty to defend, breach of contract and bad faith.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

In its Brief in support of its Motion for Summary Judgment, United Fire lists 19 numbered paragraphs of alleged undisputed facts. For purposes of this cross motion, New Salida responds as follows:

1.      Admit

2.      Admit

3.      Admit

4.      Admit

5.      Admit

6.      Admit

7.      Admit

8.      Admit

9.      Admit

10.    Admit

11.    Admit

12.    Deny.  New Salida does not know whether the language of the Total Pollution Exclusion clause has been changed since the date of April 4, 2000.  The policy is United Fire's and New Salida has no means of confirming or denying this fact.

13.    Deny.  New Salida does not know whether the definition of a "pollutant" has changed since the date of April 4, 2000.  Again, the policy that defines "pollutant" is United Fire's and New Salida has no means of confirming or denying this fact.

14.    Deny.  New Salida does not know whether the form number for the Total Pollution Exclusion clause would have changed had the language of the Total Pollution Exclusion clause changed.  The method of changing the policy is now known to New Salida thus New Salida has no means of confirming or denying this fact.

15.    Admit.

16.    Admit.

17.    Admit.

18.    Deny.  New Salida cannot confirm that United Fire considered New Salida's arguments and facts and still found no coverage.  It is clear from the plain language of the policy, as supported by the Colorado law set out below, that dirt, rock and fill material do not constitute "pollutants" under the plain meaning of the policy, thus New Salida cannot admit that United Fire still found no coverage despite New Salida's additional arguments and facts.

19.    Admit.

## STATEMENT OF DISPUTED FACTS

1.      United Fire has not produced any documents or responses to interrogatories setting forth all other cases that have denied coverage on the basis that dirt, rock and fill material constitute "pollutants" under the total pollution exclusion clause. *See* **Exhibit 2** to Plaintiff's Response Motion.

2.      New Salida makes a claim based on the Colorado Consumer Protection Act alleging, *inter alia*, that United Fire's action has had a public impact in Colorado. *See* Complaint, ¶s 28, 29 and 30.

## STATEMENT OF ADDITIONAL NONDISPUTED FACTS

1.      New Salida provided notice of Exhibits A - G attached to the Complaint to United Fire. *See* Exhibits A-G to the Complaint.

2.      Said Exhibits contained allegations of property damage purportedly arising from the operations of New Salida. *See* Exhibits A-G to the Complaint.

3.      Said alleged property damage occurred at various times in April and May of 2005 when United Fire policy No 20111703 was in effect. *See* Exhibits A-G to the Complaint; *See also* Def. **Exhibit A**.

## SUMMARY JUDGMENT STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the court of the basis

for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. Substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* at 588. (*citing* Fed.R.Civ.P. 56(c)).

## **ARGUMENT**

I.    Insurance Policies are Interpreted According to General Principles of Contract Analysis and Such an Interpretation Results in a Finding that Dirt, Rock and Fill Material do not Constitute "Pollutants."

A.    Insurance Contracts are Interpreted by Looking at the Plain Language of the Policy.

As stated in United Fire's Brief in Support of Motion for Summary Judgment, insurance policies are contracts and must therefore be interpreted according to general principles of contract analysis. (Def. Br. Mot. S.J., dkt#54 p. 8) (*citing Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999)). A court may not look beyond the plain words of an insurance contract unless there is an ambiguity in the policy. *Terramatrix v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. App. 1997). A contract is ambiguous when it is "reasonably susceptible to more than one meaning." *Id.* However, "the fact that parties disagree about the meaning of a contractual provision is *insufficient to establish ambiguity*." *Id.* (Emphasis added).

An insurer seeking to avoid the duty to defend bears a heavy burden. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). An insurer's duty to defend arises when the underlying complaint against the policyholder alleges "any facts that might fall within the coverage of the policy." *Id.* "To avoid any policy coverage, an insurer must demonstrate that a policy exclusion applies which is subject to no other reasonable interpretations." *Terramatrix*, 939 P.2d at 486. Where the insurance company's duty to defend is not apparent from the pleadings, but the allegations in the notice letters state a claim potentially or arguably within coverage, or there is some doubt as to whether a theory of recovery has been pleaded, the insurance company must accept defense of the claim. *Hecla Mining Co.*, 811 P.2d at 1089. "In other words, the [policyholder] need only show that the underlying claim may fall within policy coverage; the [insurance company] must prove that it cannot." *Compass Ins. Co.*, 984 P.2d at 614.

B.    <u>Notice Letters as the Functional Equivalent of a Formally Filed and Served Complaint Trigger the Duty to Defend Under Colorado Law, and the Insurance Company Has the Burden of Proof to Demonstrate that the Policyholder's Alleged Waste was a "Pollutant, Contaminant or Irritant" Within the Meaning of the Policy.</u>

In the environmental context, if a potentially responsible party ("PRP") notice letter, a demand from a federal or state agency, a third-party complaint in a contribution action, or a letter merely notifying a policyholder of environmental damage is received, the policyholder is under an obligation to forward every such demand, notice, summons, complaint, PRP notice letter or other process to the insurer. *Couch on Insurance* 2d (rev. ed. 1984), §§ 49.34-49.48. The reason for this is that the Colorado Supreme Court has specifically held that the term "suit" found in the standard CGL policy would encompass not only traditional lawsuits, but also coercive administrative enforcement proceedings such as Environmental Protection Agency ("EPA")

actions initiated by PRP letters under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). *Compass Ins. Co.*, 984 P.2d at 622.[4]

In *Compass Ins. Co.*, the Colorado Supreme Court ruled that while the policyholder has the initial burden of proving an occurrence, to avoid the duty to defend the insurance company bears the burden of establishing any exclusion from coverage. *Id.* In the environmental context, the carrier must show that the policyholder's wastestream was a contaminant within the meaning of the applicable pollution exclusion clause. *Id.* Here, New Salida provided notice of the various orders cited above to United Fire, alleging third party property damage, and meeting its burden of proving an occurrence within the meaning of the policy. Yet United Fire has not met its burden establishing that dirt, rock and fill material constitute pollutants and are thus excluded from coverage.

C.    The Plain language of the Policy Mandates Coverage and Defeats Application of the Total Pollution Exclusion Clause.

The CGL policy contains a Total Pollution Exclusion ("TPE") clause excluding coverage for any:

> (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
>
> (b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

(Def. **Exhibit A** at UFC 2678).

---

[4] The Supreme Court held that the PRP notice letters received by the cities were the "functional equivalent" of the complaint in *Hecla*, triggering the duty to defend, and that the carriers could not avoid their duty to defend based upon an examination of the allegations contained in the PRP letters. *Compass Ins. Co.*, 984 P.2d at 622.

It is important to note that it is the request, demand or suit on behalf of the government alleging property damage pursuant to some statutory or regulatory requirement that triggers the policy. *Id.* However, the TPE does not state that "pollutant" is to be defined based on any statutory or regulatory definition. *Id.* Rather, the policy defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and water. Waste includes material to be recycled, reconditioned or reclaimed." *Id.* at UFC 2672.

As evidenced by the following Colorado cases analyzing similar total pollution exclusions, the first step to any interpretation of a pollution exclusion clause contained within a policy is to determine whether the alleged pollutant qualifies as a pollutant *under the plain language of the policy.* *See Compass Ins. Co.*, 984 P.2d at 613 (explaining that "words used in an insurance policy should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the *contract* indicates that an alternative interpretation is intended.") (emphasis added); *Terramatrix*, 939 P.2d at 488 (explaining that "other jurisdictions have considered ammonia a pollutant *when construing CGL policy language* similar to that contained in this policy.") (emphasis added); *Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 64 P.3d 886, 887 (Colo. App. 2002) (*affirmed in party, reversed in part on other grounds*) (finding that tailings containing residual uranium and other hazardous materials such as molybdenum, nickel, arsenic and selenium constituted pollutants under the policy). Additionally, courts should not impose overly technical, legal, constrained or arcane meanings to commonly used terms like "damages," "suit," "profits," and "joint venture." *Compass Ins. Co.*, 984 P.2d at 619.

United Fire contends that because dirt, rock and fill materials are defined as "pollutants" by certain Colorado and federal laws, dirt, rock and fill material constitute "pollutants" for

purposes of the CGL policy. This position is unsubstantiated under Colorado law. In *Hecla Mining Co.*, the Colorado Supreme Court ruled that an insurer's duty to defend arises when the underlying complaint against the insured alleges any facts that might arguably fall within coverage of the policy. *Hecla Mining Co.*, 811 P.2d at 1089. In the environmental arena, this has proved to be a difficult duty to avoid. *See Compass Ins. Co.*, *cited supra.* The opinion also states that an insurer is not excused from its duty to defend an insured, unless there is *no factual or legal* basis on which the insurer might eventually be held liable to indemnify the insured. *Id.* Dirt, rock and fill materials under *certain circumstances* may qualify as pollutants or contaminants, but are *not necessarily* pollutants or contaminants *under every circumstance*. For example, dirt placed in or covering food intended for human consumption qualifies as a contaminant. It is a far different matter when dirt or fill is placed on a berm to stabilize a river bank. Ordinarily, dirt or fill under that circumstance would not be thought of as a contaminant under the plain meaning of the words contained within the *insurance contract terms*.[5] As such, under *Hecla* and its progeny, this reasonable interpretation of the contract term, "pollutant," must be given. "As many courts have noted, if [insurance companies] intended the term 'damages' to have only a limited technical meaning, they had the opportunity to clearly indicate this in their policies." *Compass Ins. Co.*, 984 P.2d at 623 (*citing Metro Wastewater Reclamation Dist, v. Continental Cas. Co.*, 834 F.Supp. 1254 at 1259 (D. Colo. 1993).

United Fire misstates the holding of *Terramatrix* stating that, "*Terramatrix* concluded that ammonia was a pollutant within the meaning of the TPE because it was defined as such

---

[5] References made to the report of January 26, 2009 of Garth H. Allen regarding the "Equal Consideration Doctrine" whereby the rights and interests of the insured are to be given at least as much consideration as the insurer gives its own financial objectives. Professor Allen finds United Fire's coverage analysis and claims related decisions to be one sided and self-serving, evidencing a failure to apply the Equal Consideration Doctrine, resulting in unreasonable and bad faith conduct. (Professor Allen Expert Report attached as **Exhibit 3** p. 8); *See also* Affidavit of Professor Allen attached as **Exhibit 4**).

under federal and Colorado law." (Def. Br. Mot. S.J., dkt#54 p. 18). This is not the reason for the court's holding that ammonia was a pollutant within the meaning of the TPE. Rather the court found that ammonia was a pollutant within the meaning of the TPE because it is a "colorless alkaline gas with a penetrating odor," which constituted a pollutant under the plain meaning of the policy. *Terramatrix,* 939 P.2d at 488. The fact that ammonia is also regulated as a hazardous substance under federal law lends further support to the holding that ammonia is a pollutant, but the court did not find that ammonia was a pollutant within the meaning of the TPE "because it was defined as such under federal and Colorado law." (Def. Br. Mot. S.J., dkt#54 p. 18); *Terramatrix*, 939 P.2d at 488 (*citing American States Ins. Co. v. F.H.S. Inc.*, 843 F.Supp. 187 (S. D. Miss. 1994) (explaining that "specialized scientific definitions of pollutant and pollution will not be applied to defeat unambiguous policy language.")

Similarly, the Colorado Court of Appeals in *Cotter Corp.* found that tailings containing uranium, molybdenum, nickel, arsenic and selenium were "pollutants" as defined under the policy because the policy excluded coverage for: "smoke, vapors, soot fumes, acids alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants." *Cotter Corp.*, 64 P.3d 886, 889 (Colo. App. 2003). The court found that this total pollution exclusion clause was not ambiguous and "there is no dispute that [the policyholder's] activities included the discharge, dispersal, release or escape of irritants, pollutants or contaminants." *Id.* at 893. The court held that the discharge of the tailings constituted a discharge of pollutants pursuant to the plain language of the policy because the materials in the tailings were toxic chemicals as defined by the policy; not based on any technical or scientific definition of pollutant. *Id.* Indeed, the court did not analyze any of the alleged pollutants under either Colorado or federal law. *Id.*

Applying the facts of these two cases to the circumstances of this case, it is clear that *dirt, rock and fill material* do not constitute "pollutants" under the plain language of the policy.  Whereas United Fire argues here that dirt, rock and fill material constitute "pollutants," the materials found to be "pollutants" in *Terramatrix* and *Cotter Corp.* consisted of toxic substances such as ammonia, uranium, molybdenum, nickel, arsenic and selenium.  *Terramatrix*, 939 P.2d at 488; *Cotter Corp.*, 64 P.3d at 889.  Neither *Terramatrix* nor *Cotter Corp.* found that dirt, rock or fill material by themselves constituted pollutants under the relevant TPEs.  As further support for this position, Professor Garth H. Allen explained in his expert report that the CDPHE Notice of Violation required New Salida to engage in and supervise "stabilization of the disturbed river bank." (**Exhibit 3** p. 4)(**Exhibit 4**).  As explained by Professor Allen, "[s]oil and rock on the river bank is not a pollutant because such soil and rock, not in contact with the river, could not possibly be an irritant or contaminant." *Id.*

Further, as explained by the Colorado Supreme Court in *Hecla Mining Co.*, even if a claim "potentially or arguably" falls within the policy coverage, the insurer must accept defense of the claim.  *Hecla Mining Co.*, 811 P.2d at 1089.  One of United Fire's claim adjusters, Ron Reihmann, made a note in the New Salida claim filed on March 22, 2006 stating, "I reread the memo Bill, and I am still confused however, *I would NOT recommend denying coverage on this claim, due to several reasons*, but okay with me if you think this correct approach." (Claim notes, UFC 0210, attached as **Exhibit 5**) (Emphasis added).  Therefore, while it is clear from the plain language of the policy that dirt, rock and fill material do not constitute pollutants, by the notations of United Fire's own claim adjuster, it is arguable that United Fire had a duty to defend.  This is a far cry from the insurance company establishing no factual or legal basis on which coverage might be afforded.

United Fire's Brief in Support of the Motion for Summary Judgment clearly states that "UFC denied the claim as excluded from coverage under the policy's [TPE] *because Colorado and federal law include the materials the Plaintiff deposited into the river in the definition of pollutant.*" (Def. Br. Mot. S.J., dkt#54 p. 1) (Emphasis added). This is essentially an admission by United Fire that it did not apply the correct standard and did not find that dirt, rock and fill were "pollutants" under the plain language of the policy. United Fire has also argued that "the definition of pollutant is unambiguous," (Def. Br. Mot. S.J., dkt#54 p. 12), and agree that "[c]ourts may not...look beyond the plain words of the insurance contract to interpret it based on the parties' underlying intent, unless the *contract terms* are ambiguous or are used in a special or technical sense not defined in the contract." *Id.* p. 8. Because the term "pollutant" as a contract term in the policy is not defined or used in a special or technical sense, and clearly excludes dirt, rock or fill material as stated by the plain language of the contract, United Fire has a duty to defend against the Underlying Actions and breaches that duty in bad faith every day that it denies coverage.

There are two Colorado cases directly on point to guide the Court's deliberation. There is simply no need to look at cases from other jurisdictions not binding on this Court. However, a review of the majority of the cases cited by United Fire reveals that most of the cases are persuasive authority for New Salida's position. Although a review of each and every case is not necessary, New Salida will discuss a few of the most persuasive cases cited by United Fire below.

In *Clarendon America Insurance Co. v. Bay Inc.*, 10 F.Supp.2d 736, 743 (S.D. TX 1998), cited by United Fire for the proposition that "sand, gravel, cement and silica are pollutants within the exclusion," the court explained that:

13

> 'Pollutant' is a defined term in the policy.  Whether the policy definition comports with this court's notion of the usual meaning of 'pollutants' is not the issue; this court has no special expertise in writing insurance policies. Our judgment about the reasonable scope of a pollution exclusion - in the absence of ambiguity - must be tied to the language of the policy.

Therefore, applying the *terms of the contract*, the court found that silica was within the ambit of pollution as defined in the policy.  *Id.* at 744.  The court found that silica was a pollutant because the policy specifically stated that "this insurance does not apply to any liability for bodily injury, personal injury, property damage and or advertising injury directly or indirectly caused by or arising out of ... *silica...* or any substances containing such material or any derivatives thereof.  *Id.* at 741-742 (Emphasis added).

Here, had United Fire wanted to exclude damage arising from dirt, rock or fill material it should have specifically included those terms in the pollution exclusion clause as the insurance company in *Clarendon America Insurance* did.  Indeed, the Colorado Court of Appeals in *Terramatrix* specifically stated that the parties "could have negotiated a policy that more precisely identified materials produced by [the policyholder] that [the insurer] intended to exclude from coverage; [however,] they did not do so." *Terramatrix*, 939 P.2d at 893, as cited by United Fire (Def. Br. Mot. S.J., dkt#54 p. 17).  Here, United Fire drafted the policy and did not include dirt, rock and fill material in the definition of a "pollutant."  Had New Salida known that United Fire intended to include dirt, rock and fill material in the definition of a "pollutant," New Salida would never have purchased such a policy given the fact that New Salida is a <u>*ditch company*</u>.

In *Monarch Greenback, LLC v. Monticello Insurance Co.*, 118 F. Supp.2d 1068, 1080 (D. ID. 1999), cited by United Fire for the proposition that "sand, silt, clay, *arsenic, mercury and zinc* deposits from mining operations were within the exclusion," (emphasis added) the court

explained that while these substances are subject to coverage under CERCLA, the first step is to conclude that "mine tailings [are] within the pollution exclusion's definition of 'pollutant.'" Therefore, without first concluding that the sand, silt, clay, arsenic, mercury and zonc deposits were "pollutants" *under the plain language of the policy*, the fact that those substances are conisdered pollutants by state or federal law is irrelevant.

United Fire relies heavily on *Ortega Rock Quarry v. Golden Eagle Insurance Co.*, 141 Cal.App.4[th] 969 (Cal. App. 4th Dist. 2006) for the proposition that "dirt and rocks are pollutants within the meaning of the Clean Water Act; thus their discharge [is] barred by the pollution exclusion." (Def. Br. Mot. S.J. p. 19). In *Ortega*, the 4th District Panel of the California Court of Appeals relied heavily on the type of overly technical, arcane and inapposite language that has been heavily criticized by the Colorado Supreme Court. *See Compass v. City of Littleton*, 984 P.2d 606, 619, 623 (Colo. 1999). In addition, the pronouncement by the California Supreme Court in the *MacKinnon v. Truck Insurance Exchange*, 73 P.3d 1205 (2003) calls in to question the specious reasoning of *Ortega Rock Quarry v. Golden Eagle Ins. Corp.* In *MacKinnon*, the California Supreme Court explained that "[t]he pollution exclusion has been, and should continue to be, the appropriate means of avoiding the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances into the environment. We think it improper to extend the exclusion beyond that arena." *Id.* at 1211. Further, the court explained that "an interpretation of 'pollutant' as applying literally to 'any contaminant or irritant' would have absurd or otherwise unacceptable results. There is virtually no substance or chemical in existence that would not irritate or damage some person or property." *Id.* at 1213.

In rejecting the argument that pesticide spraying constituted the discharge of a "pollutant" under the policy, and rejecting the insurance company's copious use of dictionary terms to

support the exclusion, the court stated that "[a]lthough examination of various dictionary definitions of a word will no doubt be useful, such examination does not necessarily yield the 'ordinary and popular' sense of the word if it disregards the policy's context." *Id.* "Rather, a court properly refusing to make a fortress out of the dictionary must attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language." *Id.*

Therefore, it is difficult to understand United Fire's reliance on the *Ortega* rationale, especially in the face of Colorado Supreme Court decisions offering more than adequate guidance on the use of the definition of "pollutant" in the policy, and the requirement of interpretation using the *plain language of the words*, and the *understanding of those words by the average purchaser of insurance*. Nowhere in the policy does it indicate a *technical meaning* relegating the definition of pollutant to that adopted under a Colorado statute of exceedingly limited application under circumstances such as those at hand.

D.    New Salida Had a Reasonable Expectation of Coverage.

Colorado has recognized the doctrine of Reasonable Expectation of Coverage.  *See Sanchez v. Connecticut General Life Ins. Co.*, 681 P.2d 974 (Colo. App. 1984) *Leliand v. Travelers Indem. Co.*, 712 P.2d 1060 (Colo. App. 1985); *Peters v. Boulder Ins. Agency Inc.*, 829 P.2d 429, 433 (Colo. App. 1991); *Struble v. American Family Ins. Co.*, 172 P.3d 950 (Colo. App. 2007).  Simply stated, the rule of Reasonable Expectation of Coverage applies when an insurance company intends to avoid liability in reliance upon a limiting condition.  *Sanchez*, 681 P.2d at 977.   Under such circumstances, it must call the limiting condition to the attention of the insurance applicant.  *Id.*   Absent proof of such disclosure, coverage is deemed to be that that would be expected by the ordinary lay person.  *Id.* (*citing Collister v. Nationwide Life Ins. Co.,*

388 A.2d 1346 (PA. 1978); *Keene Corp. v. Ins. Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981) *cert denied*, 455 U.S. 1007, 102 S.C. 1644 (1982); *Puritan Life Ins. Co. v. Guess*, 598 P.2d 900 (Al 1979)). Application of the rule requires an analysis of the totality of the circumstances involved in the transaction from the point of view of an ordinary lay person.  *Id.*  The issue is; what did the lay-applicant think he was buying in exchange for the premium?  *Id.*  Additionally, *Cotter Corp.* provides that courts attempt to carry out the intent of the parties and their reasonable expectations when interpreting insurance policies. *Cotter Corp.,* 90 P.3d at 819

In his deposition, Ralph L. "Terry" Scanga, President of New Salida, states that he purchased this insurance to cover property damage and to provide a defense against litigation arising from the operations and maintenance of New Salida's ditch.  (30(b) (6) Deposition of New Salida Ditch, January 21, 2009, p. 95-96, 134-136, Attached hereto as **Exhibit 6**).  He also stated that the ditch company owns no land, and resultantly, in fulfilling its obligation to maintain the ditch, it must necessarily exercise a right of prescription across the lands owned by others.  *Id.* at p. 128-129.  As such, any damage to third-party property arising from the maintenance or from the operations of the ditch is covered by a liability policy such as the one in question.  Without proper and timely maintenance, the ditch company would lose its water rights. *Id.* 130-131.

Mr. Scanga also testified that in seeking coverage from his insurance agents, he was advised that the United Fire policy at issue "would work." *Id.* 95-96, 135-136.  He was not advised by either of his agents or anyone from United Fire that he would need pollution insurance.  *Id.*  Neither was he advised of the potential applicability of the Total Pollution Exclusion in the event of a ditch break.  *Id.*

Professor Allen points out in his report that it is unlikely that any insured would view soil and rock as pollutants. (*See* **Exhibit 3 and 4**).  Soil and rock are non-toxic natural, not man-made, materials, and are not normally considered irritants or contaminants.  *Id.* As an illustration, Professor Allen points out that the Rocky Mountains are largely composed of soil and rock, and it is doubtful whether anyone armed with the United Fire policy definition of "pollutant" would think of the Rocky Mountains as a pile of pollutants.  *Id.*

As Professor Allen states in his rebuttal report dated March 2, 2009,

> [I]f [New Salida] is denied coverage in any situation where it disturbs soil, dirt, or rock, New Salida's CGL coverage would seldom protect [New Salida] in the event of a liability claim... In this case, one of [New Salida's] core activities is to maintain its irrigation ditches.  That maintenance necessarily involves moving soil, dirt, sand, and rock.  If coverage is denied for all such activities the insuring agreement in the CGL (sic) is illusory and of little or no value.  Insurance companies must design their insurance policies so that the policy covers the main exposures faced by the insured...
>
> If the policy will not provide coverage for core exposures, the insurer must direct the insured to a different insurance policy that will provide protection.

(Allen Rebuttal Report, Attached as **Exhibit 7 and 4**).

Finally, Professor Allen opines that permitting United Fire to treat its ditch maintenance as involving pollutants ignores any reasonable expectation of the insured. *Id.*  It is patent from a reading of Mr. Scanga's deposition that he reasonably believed he had coverage for the ditch break claim in question.  *See* **Exhibit 6**.

II.     Because Dirt, Rock and Fill Material do not Constitute Pollutants Under the Plain Language of the Policy, Summary Judgment on the Issue of Liability Must be Entered on New Salida's Breach of Contract and Bad Faith Claims

New Salida is asking this Court to find that United Fire is liable to New Salida because the law in Colorado clearly establishes that dirt, rock and fill material do not constitute

"pollutants" under the plain language of the TPE.  Assuming that the Court finds that dirt, rock and fill material do not constitute "pollutants" under the plain language of the policy, United Fire is liable for New Salida's expenses incurred because of the CDPHE Notice of Violation, damages and attorneys' fees as a result of United Fire's common law and statutory bad faith breach of contract and, as an alternative, damages for United Fire's violation of the Colorado Unfair Claims - Deceptive Trade Practices Act and the Colorado Consumer Protection Act.  Each of these claims is briefly discussed below.

United Fire specifically acknowledges that its duty to pay New Salida's expenses incurred because of the CDPHE Notice of Violation is contingent upon a finding that dirt, rock and fill material constitute "pollutants" under the policy.   (Def. Br. Mot. S.J., dkt#54 p. 12-13). Therefore, if this Court finds that dirt, rock and fill material do not constitute "pollutants" under the plain language of the policy, United Fire must pay the expenses incurred by New Salida as a result of the CDPHE Notice of Violation.

United Fire similarly acknowledges that it has no duty to defend New Salida and is thus not liable for any statutory or common law bad faith claims because "[i]f there is no coverage for the claim, [United Fire] cannot have acted in bad faith." *Id.* p. 21.  As explained above, assuming that the Court finds that dirt, rock and fill material are not "pollutants" under the plain language of the contract, United Fire does have a duty to defend and has breached that duty.  Additionally, although United Fire is arguing at this point that it in good faith believes that it has no duty to defend, the claim log notes from United Fire's claim adjuster show that at least one of United Fire's claims adjusters felt that United Fire did have a duty to defend.  Mr. Reihmann specifically stated that he "would NOT recommend denying coverage on this claim, due to several reasons." (*See*  **Exhibit 5**).

As explained in New Salida's Motion to Compel, a claim pursuant to the CCPA requires a showing that the defendant's practices "significantly impact the public as actual or potential consumers of the defendant's goods, services or property." *See Coors v. Security Life*, 91 P.3d 393, 398 (Colo. App. 2004) (*affirmed in part, reversed in part on other grounds*). In order to determine whether a party has shown a "public impact" the court will consider: "(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously affected other consumers or has the significant potential to do so in the future." *Id.* at 399.

New Salida filed it Motion to Compel asking the Court to require United Fire to identify any and all claims that have been denied on the basis that dirt, rock of fill material constitute "pollutants" under the TPE. (Pl. Mot. Comp. p. 3-4). To date, United Fire has refused to comply with this request. Specifically, while this Court ordered United Fire to extract all cases dealing with the invocation of the pollution exclusion clause from its database, on April 20, 2009, United Fire sent a letter to New Salida explaining that ""United Fire's records cannot be searched in the manner suggested by Judge Kane." (*See* **Exhibit 2** to Plaintiff's Response Motion).

Due to the fact that United Fire has refused to comply with the Court's order, New Salida asks that the Court delay ruling on the UCDPA and CCPA claims until such time as discovery is completed. Until discovery is completed, there are various genuine issues of material fact yet to be resolved on these claims.

However, as explained by Professor Garth H. Allen in his expert report:

> UFC states, in its responses to interrogatories 16 and 21, that **it adjusts all claims in the same manner.**[6] It therefore follows that UFC

---

[6] In its Interrogatory Responses, United Fire responded generally that it is the policy of United Fire to treat all policyholders the same, and with the same duty of good faith and fair dealing that is inherent in all policies, no

consistently takes an unreasonable approach in its application of the pollution endorsement and is engaged in a pattern and practice of conduct evidencing substandard and self-serving claim adjustment **under policies sold to ditch companies and others. UFC is a large insurer with a significant market presence in Colorado, and its conduct and method of adjusting claims clearly and unmistakably has** *public impact***.**

(*See* **Exhibit 3**).

Therefore, even though United Fire has refused to comply with New Salida's request, because United Fire has already stated that it adjusts all claims in the same matter, it follows that United Fire has had a public impact on the state of Colorado due to its unreasonable coverage practices.

Professor Allen's reports present more than sufficient basis for the entry of partial summary judgment on the issue of the duty to defend and liability for damages for breach of contract and bad faith. United Fire has denied coverage. The coverage denial is contrary to well settled Colorado law. For the reasons set forth in Professor Allen's two reports, and the authorities and argument herein, and in Plaintiff's Response to Defendant's Partial Motion to Dismiss, which authorities and argument are incorporated herein, United Fire's conduct is per se unreasonable and constitutes bad faith under Colorado law.

## CONCLUSION

Because dirt, rock and fill material do not constitute "pollutants" under the *plain language of the policy*, New Salida is entitled to summary judgment on the issue of liability. The TPE does not bar coverage of New Salida's claim, and the evidence in the record clearly indicates that the complaint states a claim that is "potentially or arguably within the policy coverage" as evidenced by the claim adjuster's notes cited above. This same evidence makes

matter what type of claim may be presented, nor by whom, and to adjust all claims made by or against its insureds in the same professional manner without discriminating against any insured or the insured's interest, and that Colorado law and the insurance contracts control the rights, duties, expectations, and obligations of the parties thereto.

clear that in addition to breaching the contract of insurance with New Salida, United Fire acted in

bad faith in doing so.  There is no genuine issue of material fact as to whether dirt, rock and fill

material constitute "pollutants" under the plain language of the policy, thus New Salida is

entitled to summary judgment on its Breach of Contract and Bad Faith.

WHEREFORE, New Salida Ditch Company respectfully requests that the Court enter

summary judgment in its favor and against United Fire & Casualty Company on the issue of duty

to defend and liability on the claims of Breach of Contract and Bad Faith.

Respectfully submitted this 27th day of April, 2009.

GRIMSHAW & HARRING, P.C.

s/ William J. Brady
William J. Brady, Esq.
Jamie N. Cotter, Esq.
1700 Lincoln St., Suite 3800
Denver, CO 80203
Tele: 303-839-3800 | Fax: 303-839-3838
E-mail: wmjbrady@grimshawharring.com

ATTORNEYS FOR PLAINTIFF NEW
SALIDA DITCH COMPANY INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2009, I electronically served a true and
correct copy of the foregoing PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR
SUMMARY JUDGMENT ON THE ISSUE OF THE DUTY TO DEFEND AND LIABILITY
FOR BREACH OF CONTRACT AND BAD FAITH, addressed to the following:

Patrick Q. Hustead, Esq.
Melissa W. Shisler, Esq.
Adam B. Kehrli, Esq.
THE HUSTEAD LAW FIRM
*A Professional Corporation*
4643 S. Ulster St., Suite 1250
Denver, CO 80237                             s/ William J. Brady
                                            William J. Brady