IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **08-cv-00391-JLK**

**THE NEW SALIDA DITCH COMPANY, INC., a Colorado corporation**,

Plaintiff,

v.

**UNITED FIRE & CASUALTY INSURANCE COMPANY, an Iowa corporation**,

Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**Kane, J.**

Plaintiff, a ditch and irrigation company incorporated in Colorado, seeks damages from

Defendant, an insurance company incorporated in Iowa, for Defendant's refusal to defend and

indemnify Plaintiff against legal action taken by the U.S. Army Corps of Engineers ("ACOE")

and State of Colorado Department of Public Health and Environment ("CDPHE") for Plaintiff's

unpermitted discharge of fill material[1] into the Arkansas River.[2] This case is before me on Cross-motions for Summary Judgment (Docs. 53 and 60), as well as on Defendant's Partial Motion to Dismiss (Doc. 106). For the reasons stated below, I grant Defendant's Summary Judgment Motion and Partial Motion to Dismiss in full, and deny Plaintiff's Motion for Partial Summary Judgment.

## JURISDICTION AND VENUE

As corporations incorporated and with principal places of business in Colorado and Iowa, respectively, Plaintiff and Defendant are citizens of different states for purposes of establishing diversity jurisdiction. 28 U.S.C. § 1332(c)(1) (2006). Additionally, the amount in controversy in this case exceeds the $75,000 statutory threshold. 28 U.S.C. § 1332(a); *see Plaintiff's Initial Disclosures Pursuant to Rule 26(A)(1)*, Defendant's Exhibit I, Doc. 54-3, pp. 57-58. Accordingly, jurisdiction in the Federal District Court is proper.

Further, because a significant part of the events or omissions giving rise to the claim for insurance coverage occurred in the District of Colorado; a policy of commercial general liability insurance was negotiated, purchased, and delivered in Colorado; and the underlying controversy

---

[1]Throughout this opinion, I will refer to the material discharged by New Salida as "fill material." I do not, however, intend to limit my holding to this term. On the contrary, I use this term to encompass a wide variety of materials including but not limited to soil, sand, dirt, rocks, and sediment consistent with the Clean Water Act, 33 U.S.C. § 1251, *et seq.* (2006), and the Colorado Water Quality Control Act, C.R.S. § 25-8-101, *et seq.* (2009).

[2]Though New Salida has also asserted the existence of other claims by the Bureau of Land Management, the U.S. Environmental Protection Agency, and a neighboring landowner (Ron Sega), it has provided no evidence that these claims qualify as "complaints" triggering the duty to defend under the terms of the CGL and Colorado law. Accordingly, I do not consider these claims in this opinion, and my ruling does not necessarily impact United Fire's potential liability should these claims later ripen to "complaints."

2

giving rise to the claim for insurance coverage occurred in Colorado, venue in the District of

Colorado is proper.  28 U.S.C. § 1391(a)(2) (2006).

As this court exercises jurisdiction pursuant to the diversity statute, the substantive law of

Colorado controls.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Blackhawk-Central City*

*Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000) (citing

*Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998)).  Therefore, Colorado choice-of-law

rules apply.  Given that all of the significant events at issue occurred in Colorado, the insurance

policy must be interpreted within the framework of Colorado law.  *Fire Ins. Exchange v. Bentley*,

953 P.2d 1297, 1300 (Colo. Ct. App. 1998) (citing *Wood Bros. Homes, Inc. v. Walker*

*Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979)).

## FACTS

Plaintiff, the New Salida Ditch Company, Inc. ("New Salida"), owns and manages the

New Salida Ditch, an irrigation ditch used to divert water from the Arkansas River to

neighboring agricultural lands.  New Salida has been insured under a Commercial General

Liability ("CGL") policy issued by Defendant, United Fire & Casualty Insurance Company

("United Fire"), since April 4, 2000, and continued to renew this policy in subsequent periods

thereafter.  Pursuant to the terms of the CGL policy, United Fire is obligated to both defend and

indemnify New Salida against any damages resulting from New Salida's activities and

operations, up to $1,000,000.  This duty is not, however, absolute, but is instead subject to a

variety of policy exclusions.  Most relevant to the instant proceeding, the CGL includes a Total

Pollution Exclusion ("TPE") which bars coverage for:

(1)     "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2)     Any loss, cost or expense arising out of any:

    (a)     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

*Total Pollution Exclusion Endorsement*, Defendant's Exhibit A, Doc. 54-2, p. 21.  The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  *Commercial General Liability Coverage Form*, Defendant's Exhibit A, Doc. 54-2, p. 17.

In April of 2005, New Salida, in the process of performing repairs to its irrigation ditch, introduced fill material below the high water line of the Arkansas River.  This unpermitted activity attracted the attention of the ACOE and CDPHE, which ordered New Salida to cease and desist from any further filling or construction on the New Salida Ditch pending application for and review of permits under § 404 of the Clean Water Act and § 501 of the Colorado Water Quality Control Act .[3]  New Salida's subsequent permit applications were denied, and the ACOE and CDPHE ordered New Salida to undertake actions to remediate the damages resulting from its violations of § 404 of the Clean Water Act, 33 U.S.C. § 1344 (2006), and §§ 602, 605, and

---

[3]  Though New Salida also cites letters sent by the Bureau of Land Management and the U.S. Environmental Protection Agency as coverable complaints, as discussed in FN 2, *supra*, these letters do not constitute "complaints" for purposes of triggering the duty to defend under the CGL or Colorado law.  Accordingly, they will not be addressed in this Opinion.

606 of the Colorado Water Quality Control Act, C.R.S. §§ 25-8-602, 605-606 (2009).

In compliance with the terms of its CGL policy, New Salida notified United Fire of the demand letters sent by the ACOE and the CDPHE. *Letter from David M. Scanga, esq., Hoskin, Farina & Kampf PC, to Ron Reihmann, Claims Adjuster, United Fire & Casualty Co.* (Mar. 13, 2006), Defendant's Exhibit C, Doc. 54-2, pp. 52-54.  On March 29, 2006, however, United Fire denied New Salida's request for defense and indemnification for the costs arising from New Salida's response to these demand letters.  *Letter from Bill Newman, Litigation Supervisor, United Fire & Casualty Co., to David M. Scanga, esq., Hoskin, Farina & Kampf* (Mar. 29, 2006), Defendant's Exhibit E, Doc. 54-2, pp. 57-67.  United Fire based its decision to deny coverage on a finding that the fill material deposited by New Salida in the Arkansas River was a "pollutant" within the terms of the TPE; as a result, the losses incurred by New Salida in the process of developing the Remediation Plan and defending itself against the CDPHE's enforcement action resulted from the "discharge" of a "pollutant" and were excluded from the CGL policy's coverage by the TPE.

New Salida apparently appealed this ruling, sending numerous letters to United Fire challenging this determination.[4]  Based on the opinion of both internal and external legal counsel, however, United Fire continued to maintain its position that New Salida's claims were barred by the TPE.  *See Letter from Bill Newman, Litigation Supervisor, United Fire & Casualty Group, to David Dodero, esq., Hoskin, Farina & Kampf* (June 8, 2006), Defendant's Exhibit J, Doc. 54-3, pp. 60-63; *Letter from Bill Newman to David Dodero* (July 28, 2006), Defendant's

---

[4]  Though the letters sent by New Salida's counsel to United Fire are not in the record before me, I assume their existence based upon references to them in United Fire's response letters.

Exhibit K, Doc. 54-4, pp. 1-11; *Letter from Bill Newman to David Dodero* (Aug. 25, 2006),

Defendant's Exhibit L, Doc. 54-4, pp. 12-13.

On February 25, 2008, New Salida filed suit in this court seeking recovery for damages

resulting from United Fire's denial of coverage.

## MOTION TO DISMISS

### *Legal Standard*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails

"to state a claim upon which relief can be granted." A complaint must be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007); *Dias v. City &*

*County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, . . . plaintiff's obligation to

provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 550 U.S. at

555 (citations and alterations omitted). "Factual allegations must be enough to raise a right to

relief above the speculative level." *Dias*, 567 F.3d at 1178.  The court must accept as true all

well-pleaded facts and construe all reasonable allegations in the light most favorable to the

plaintiff. *United States v. Colo. Supreme Court,* 87 F.3d 1161, 1164 (10th Cir.1996) (citing

*Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

### *Discussion*

In its Partial Motion to Dismiss, United Fire asserts two grounds why New Salida's

claims under C.R.S. §§ 10-3-1115 and 10-3-1116 fail.  First, United Fire argues that the statutes,

6

enacted after United Fire's decision to deny coverage for New Salida's claims, may not be applied retroactively; second, United Fire asserts that §§ 1115 and 1116 only apply to first party claims. *Defendant's Renewed Partial Motion to Dismiss*, Doc. 106, pp. 2-3. New Salida counters, arguing that "remedial statutes can be applied retroactively without violating the general constitutional prohibition against retrospective application of new legislation," *Plaintiff's Response to Defendant's Renewed Partial Motion to Dismiss*, Doc. 111, p. 2, and, in the alternative, that even if the statutes don't apply retroactively, they do apply to United Fire's continued breach of its duty to provide coverage after the statute's effective date. *Id.* at 8-11. New Salida does not address United Fire's arguments that §§ 1115 and 1116 only apply to first party claims.

## 1.  Retroactive Application of §§ 1115 and 1116

This is not an issue of first impression. Other courts in this district have concluded that §§ 1115 and 1116 do not apply retroactively. *See Teletech Holdings, Inc. v. Continental Cas. Co.*, No. 07-cv-2313-RPM-BNB, Defendant's Exhibits C, D, E, and F, Doc. 26, pp. 5-28; *James River Ins. Co. v. Rapid Funding, LLC*, 2009 WL 524994, *8 (D. Colo. 2009) ("[T]he provisions of § 10-3-1116 do not apply retroactively to events that occurred prior to its effective date of August 5, 2008"). It is undisputed that United Fire denied New Salida's claim on March 29, 2006–over two years before the effective date of §§ 1115 and 1116. *Letter from Bill Newman, Litigation Supervisor, United Fire & Casualty Co., to David M. Scanga, esq., Hoskin, Farina & Kampf* (Mar. 29, 2006), Defendant's Exhibit E, Doc. 54-2, pp. 57-67. Because I see no reason to depart from the rulings in these cases, I find that §§ 1115 and 1116 do not apply retroactively to United Fire's conduct in this case.

## 2. United Fire's Continued Duty to Provide Coverage

Even if §§ 1115 and 1116 do not apply retroactively, New Salida argues that United Fire is under a continuing duty to act in good faith and provide coverage under the CGL policy.  This argument seems to ignore the well-settled law that a cause of action based upon an insurance carrier's unreasonable refusal to pay accrues at the time of the refusal. *Goodson*, 89 P.3d at 414 (citing *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984)).  An insurer's continued refusal to cooperate with an insured cannot serve as the basis for a separate bad faith claim; if the ongoing conduct can be traced back to the initial decision to deny coverage, no additional claims result. *James River*, 2009 WL 524994 at *8 (citing *Sw. Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1256-57 (D. Colo. 2003); *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545, 552 (Colo. 1997)), Doc. 86-2, pp. 6-7.

New Salida, however, relies upon *Cunningham v. Standard Fire Ins. Co.,* 07-cv-02538-REB-KLM, Plaintiff's Exhibit A, Doc. 33-2*,* for the proposition that, under §§ 1115 and 1116, an insurer which has denied coverage may be held liable for breaching a continuing duty to act in good faith. *Plaintiff's Response to Defendant's Renewed Partial Motion to Dismiss*, Doc. 111, pp. 10-11.  In *Cunningham*, the insurer had not made a final decision to deny coverage prior to the effective date of the statute. *Id*. at 3.  As a result, the court found the insurer potentially liable under §§ 1115 and 1116 for failing to comply with its continuing duty to act in good faith and provide coverage. *Id.*  New Salida does not dispute that United Fire denied its claim prior to the effective date of §§ 1115 and 1116, nor does New Salida assert any claims of bad faith arising from conduct other than this initial decision to refuse coverage.  Quite simply, *Cunningham* does not apply to the facts in this case.

8

### 3.   Sections 1115 and 1116 Only Apply to First Party Claims

United Fire also argues that even if §§ 1115 and 1116 were found to apply retroactively or if they applied to a breach of a continuing duty to act in good faith, they do not apply to the third-party claims pursued by New Salida in this case.  The remedy afforded by §§ 1115 and 1116 is limited to first-party claimants.  C.R.S. §§ 10-3-1115(1)(a), 10-3-1116(1).  The act defines a "first-party claimant" as "an individual, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy."  C.R.S. § 10-3-1115(b)(I).  As clarified by the Colorado Supreme Court in the context of insurance bad faith:

> First-party bad faith cases involve an insurance company refusing to make or delaying payments to an insured owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto-insurance . . ..  Third-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a *liability* policy.

*Goodson v. American Std. Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (emphasis added).  New Salida's claims are clearly third-party claims based on United Fire's failure to provide coverage under New Salida's Commercial General *Liability* policy.  Sections 1115 and 1116 provide no remedy for these claims.

In light of these findings, New Salida has failed to state a claim under §§ 1115 and 1116 for which it is entitled to relief. Accordingly, Defendant's Partial Motion to Dismiss is granted.

### CROSS-MOTIONS FOR SUMMARY JUDGMENT

*Legal Standard*

Summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2);

*Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).  A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented.  *Id.*

On a motion for summary judgment, the moving party bears the burden of demonstrating that no genuine issue of material fact exists.  *Id.* at 1145.  Where the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by demonstrating a lack of evidence for an essential element of the nonmovant's claim.  *Id.*  In deciding whether the moving party has carried its burden, I do not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party.  *Id.*  Neither unsupported conclusory allegations nor mere scintilla of evidence, however, are sufficient to create a genuine dispute of material fact on summary judgment.  *See Mackenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).  When a moving party has carried its burden under Rule 56(c), more than "some metaphysical doubt" as to the material facts must be demonstrated by the nonmovant to survive summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When parties file cross-motions for summary judgment and there is no non-moving party, the Court may assume that it need not consider any evidence other than materials filed by the parties.  *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

(THIS SPACE INTENTIONALLY LEFT BLANK)

*Discussion*

## 1.  Breach of Contract

A.  Interpreting the Total Pollution Exclusion

Both parties accept that the notice and demand letters sent to New Salida by the ACOE and the CDPHE constitute a "complaint" for purposes of triggering United Fire's duty to defend under the CGL.  *See Defendant's Brief in Support of Motion for Summary Judgment*, Doc. 54, pp.12-13; *Plaintiff's Brief in Support of Cross Motion for Partial Summary Judgment*, Doc. 61, pp. 7-8 .  The only issue which remains is whether New Salida's claims are barred by the TPE found in the CGL policy.

In order to avoid the duty to defend and indemnify New Salida, United Fire must prove that the TPE in the CGL policy effectively bars New Salida's claims.  New Salida's CGL policy is a contract, and must be interpreted according to the general principles of contract analysis. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).  In interpreting the policy, I must focus on the plain meaning of the terms of the policy, unless the policy terms are ambiguous or used in a special or technical sense not defined in the policy.  *See TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. Ct. App. 1997).  Terms are ambiguous when they are reasonably susceptible to more than one meaning; the parties' disagreement about the meaning of a term is insufficient to establish ambiguity.  *Id.*

The language of the TPE is relatively clear; it bars coverage for bodily injury or property damage resulting from the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants,'" as well as for "[a]ny loss, cost or expense arising out of any . . . claim or suit by or on behalf of a governmental authority for damages" resulting from

11

pollutants. *Total Pollution Exclusion Endorsement*, Defendant's Exhibit A, Doc. 54-2, p. 21. The issue then, in this case, is whether the fill material discharged by New Salida in its repair operations qualifies as a "pollutant" under the terms of the policy such that the costs associated with responding to the ACOE and CDPHE demand letters are unrecoverable under the terms of the CGL policy and TPE.

The CGL policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Commercial General Liability Coverage Form*, Defendant's Exhibit A, Doc. 54-2, p. 17.   In order to determine the plain and ordinary meaning of these terms, it is useful and appropriate to consult a dictionary. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1091 (Colo. 1991).

The Oxford English Dictionary defines "solid" as a "substance or body . . . free from empty spaces, cavities, interstices, etc.; having the interior completely filled in or up." Oxford English Dictionary, Vol. XV 969 (2d ed. 1989).  Based on this definition, and the plain meaning of the term, it is apparent that the fill material at issue in this case is a "solid."

"Contaminant" is defined as "that which . . . renders impure by contact or mixture." Oxford English Dictionary, Vol. III 809 (2d ed. 1989).  It follows from this definition that fill material, when introduced into the relatively pure waters of the Arkansas River, acts as a "contaminant."  This conclusion is supported by the report of the Environmental Consultant hired by New Salida, which documents the impacts of New Salida's unpermitted discharges of fill material. *Letter from Don J. Conklin, Jr., Vice Pres., Chadwick Ecological Consultants, Inc., to Andrew Ross*, CDPHE (Mar. 27, 2006), Defendant's Exhibit G, Doc. 54-3, pp. 21-22.

It follows from the definitions of these terms that the fill material at issue in this case is a "pollutant" under the TPE.  In reaching this conclusion, however, I am mindful that a literal interpretation of the terms of a TPE, without a case-by-case analysis of the relevant facts and circumstances, could result in an unnecessarily broad coverage exclusion.  Accordingly, I must give due consideration to the facts and circumstances involved in this case in order to ensure that the TPE unambiguously applies to the circumstances of this case.  *See TerraMatrix*, 939 P.2d at 487.

New Salida does not contest these definitions or the fact that, in certain circumstances, fill material may qualify as a pollutant or contaminant.  Instead, New Salida argues that when considered in the context of this case, fill material cannot be considered a "pollutant" for purposes of the TPE.  *Plaintiff's Brief in Support of Cross Motion for Partial Summary Judgment*, Doc. 57, p. 12.   In support of this argument, New Salida attempts to distinguish between substances, such as fill material, which "under *certain circumstances* may qualify as pollutants or contaminants" and those, such as uranium tailings and ammonia, which are "pollutants or contaminants *under every circumstance*." *Id.* at 10 (emphasis in original); *see TerraMatrix*, 939 P.2d 483 (addressing ammonia) ; *Cotter v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo. 2004) ("*Cotter II*") (addressing uranium tailings).  New Salida seems to argue that, in order to be a pollutant under the plain meaning of the TPE, a "solid, liquid, gaseous or thermal irritant or contaminant" must be a pollutant under every circumstance; as fill material is not a pollutant in every circumstance,[5] it cannot be considered a pollutant under

[5]As New Salida's retained expert notes, "Soil and rock are the materials that comprise the majestic Rocky Mountains.  I doubt if anyone armed with the definition of pollutant found in the UFC policy would think of the Rocky Mountains as piles of pollutants." *Letter from Garth Allen to William J. Brady, esq., Grimshaw and Haring PC* (Jan. 26, 2009), Plaintiff's Exhibit 3, Doc

the plain meaning of the TPE.

According to New Salida, if United Fire wished to include fill material as a "pollutant" under the policy, it should have done so by unambiguously including it within the definition of "pollutant" in the policy.  *Plaintiff's Brief in Support of Cross Motion for Partial Summary Judgment*, Doc. 57, p. 10.   The TPE does not, however, specifically mention "fill material" or any of its derivatives in the definition of "pollutant."  Consequently, New Salida concludes, United Fire cannot rely on the TPE as a bar to recovery for the damages associated with New Salida's discharge of "fill material" into the Arkansas River.  For the reasons stated below, I find this argument unavailing.

To begin with, New Salida relies upon two cases, *Compass Ins. Co. v. City of Littleton* ("*Compass*") and *Cotter v. American Empire Surplus Lines Ins. Co.* ("*Cotter I*"), which do not support its contention that United Fire was required to include fill material within the definition of "pollutant" in order to bar recovery under the TPE.  *Compass*, 984 P.2d 606; *Cotter*, 64 P.3d 886 (Colo. Ct. App. 2002) (rev'd on other grounds by *Cotter II*, 90 P.3d 814).  The court's finding in *Compass* was in relation to an insurer's assertion that environmental response costs were *not* included within the plain meaning of "damages."  *Compass*, 984 P.2d at 623.  The court held that in order to *limit* the plain meaning of a term, the insurer must include the technical definition in the policy.  *Id.*  In this case, United Fire is not arguing for a limited definition of the term "pollutant;"  on the contrary, it is arguing that the plain meaning of the term "pollutant," as it is defined in the policy, *includes* "fill material."  Moreover, the court in *Cotter I* specifically rejected the contention that an insurer had to "precisely identif[y] materials . . . [that it] intended

---

61-2, p. 6.

to exclude from coverage." *Cotter I*, 64 P.3d at 893.  Thus, New Salida's reliance on *Compass* and *Cotter I* is misplaced.

Furthermore, New Salida's argument that fill material is a pollutant or contaminant in only limited circumstances is not dispositive in this case. Courts have considered a variety of factors in determining whether or not a substance qualifies as a pollutant within the meaning of a TPE as applied in a specific context.  In *TerraMatrix*, the court relied upon three factors in determining that the TPE at issue applied to bar recovery for damages resulting from a discharge of ammonia:  its toxic nature, its treatment as a pollutant under State and Federal statutes and regulations, and the similar findings of other courts. 939 P.2d at 488.  Though fill material is admittedly, in most cases, non-toxic, it is useful to consider the other factors enumerated by the *TerraMatrix* court in determining whether fill material qualifies as a pollutant within the meaning of the TPE in New Salida's CGL policy.

It is undisputed that New Salida discharged fill material into the Arkansas River.  *See Deposition of Ralph N. Scanga*, p. 76, ll. 2-7, Defendant's Exhibit N, Doc. 54-4, p. 25.   It is also undisputed that fill material is regulated as a pollutant by both the Clean Water Act and the Colorado Water Quality Control Act and their implementing regulations.  *See* 33 U.S.C. § 1304 (2006); 33 C.F.R. § 323.2(e)(2); C.R.S. § 25-8-103(15) (2009); 5 C.C.R. 1002-61, § 61.2(76). Though New Salida correctly asserts that "the TPE does not state that 'pollutant' is to be defined based on any statutory or regulatory definition," *Plaintiff's Brief in Support of Cross Motion for Partial Summary Judgment*, Doc. 61, p. 9, it does not follow that the statutory and regulatory treatment of "fill material" as a pollutant in the circumstances of this case should not be considered in determining the plain meaning of the TPE.  On the contrary, this is an important

15

factor in determining the plain meaning of the TPE within the context of this dispute.

Furthermore, though this is an issue of first impression in Colorado, other courts considering this same issue have determined that fill material is a pollutant under the plain meaning of similarly worded TPE's. *See Pa. Natl. Mut. Cas. Ins. Co. v. Triangle Paving, Inc.*, 973 F. Supp. 560 (E.D.N.C. 1996); *Essex Ins. Co. v. H & H Land Dev. Corp*, 525 F. Supp.2d 1344 (M.D. Ga. 2007); *Owners Ins. Co. v. Chadd's Lake Homeowners Assoc., Inc.*, 2006 WL 1553888 (N.D. Ga. 2006); *cf. Mountain States Cas. Co. v. Kirkpatrick*, 2007 WL 2506640, *5 at n. 3 (D. Colo. 2007) (finding that cooking grease, though not necessarily "toxic when used as a food . . . would still be considered a contaminant when introduced in large quantities in drinking water or other places it does not belong"); *Clarendon America Ins. Co. v. Bay, Inc.*, 10 F. Supp. 2d 736 (S.D. Tex. 1998) (finding silica, though not present on Environmental Protection Agency lists, to be within the ambit of a similarly worded TPE). Notably, in *Pennsylvania National*, the court dismissed the insured party's arguments that references to statutory or regulatory materials were inappropriate and that the term "pollutant" only extended to industrial or man-made contaminants. 973 F. Supp. at 564-65.

Indeed, there is only one case I can find concluding that fill material discharged into jurisdictional waters is not a "pollutant" for purposes of barring coverage under a TPE. In *Tsakopoulos v. American Manuf. Mut. Ins. Co.*, the court, applying the principle of *ejusdem generis*[6] as required by California law, found that the term "pollutant" was restricted to contaminants and irritants of the same kind, class, or nature as the specific examples listed in the

---

[6] *Ejusdem generis* is defined by Black's Law Dictionary as, "A canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Black's Law Dictionary 594 (9th ed. 2009).

policy.  2003 WL 22595248, *6 (E.D. Cal. 2000).  However, *ejusdem generis* should not be applied in a manner that defeats the obvious purpose of an insurance policy.  *Cf. Davidson v. Sandstrom*, 83 P.3d 648, 657 (Colo. 2004) (holding that *ejusdem generis* "may not be used to defeat the obvious purpose of legislation") (quoting *People v. San Emerterio*, 839 P.2d 1161, 1166 (Colo. 1992)).  I find that applying *ejusdem generis* in this case would defeat the plain meaning of the TPE; in the context of this policy, the term "including" signifies that the listing of examples of "pollutants" is for purposes of illustration–not to limit the types of "pollutants" covered under the TPE.

Applying the plain language of the CGL policy and TPE exclusion to the the facts of this case, I find that the TPE in New Salida's CGL policy is not ambiguous.  The fill material discharged by New Salida into the Arkansas River is a "pollutant" under the plain meaning of the terms of the policy.  Having determined the meaning of the TPE, I must next consider the nature of United Fire's duty under New Salida's CGL policy.

## B.  United Fire's Duty to Defend

By allowing an insurer undertaking a duty to defend to seek reimbursement for defense costs if it is later determined that no duty existed, the Colorado courts have created a powerful incentive for insurers to defend first and seek reimbursement later.  *Cotter II*, 90 P.3d at 828.  It is still possible, nevertheless, for an insurer to avoid the duty to defend altogether.  An insurer such as United Fire, however, bears a heavy burden in avoiding this duty; it must prove that there exist no allegations in the underlying complaint which would impose a liability covered by the policy.  *Id.* at 829; *Compass*, 984 P.2d at 613.

Accordingly, I must first consider the allegations contained in the enforcement letters

sent by the ACOE and the CDPHE.  *Compass*, 984 P.2d at 613.  If those allegations potentially

come within the terms of the policy, or if there is even some doubt, United Fire is under a duty to

defend the claim.  *Id.* at 613-14 (citing *Hecla Mining*, 811 P.2d at 1089).  United Fire may,

however, rely on the unambiguous language of the TPE in avoiding policy coverage.  In order to

successfully rely on the TPE, United Fire must show that "the allegations in the complaint are

solely and entirely within the exclusions in the insurance policy."  *Id.* at 614.  If the TPE relieves

United Fire of a duty to defend, "no duty to indemnify can arise."  *TerraMatrix*, 939 P.2d at 486.

An examination of the underlying complaints at issue in this case reveals that the

allegations contained therein were squarely within the scope of the TPE.  In its cease and desist

letter, the ACOE informed New Salida that its "discharge of [unauthorized fill] into [the

Arkansas River] is in violation of Section 404 of the Clean Water Act."  *Letter from Van A.*

*Truan, Chief, Southern Colorado Regulatory Office of the ACOE, to Terry Scanga, Upper*

*Arkasas Water Conservancy District* (May 13, 2005), Plaintiff's Exhibit A, Doc. 16-2.

Similarly, the CDPHE accused New Salida of placing fill material "directly in and along at least

one thousand five hundred eighty four (1,584) linear feet of the Arkansas River" in violation of

C.R.S. §§ 25-8-501(1), 5 C.C.R. 1002-61, § 61.3(1)(a), and 5 C.C.R. 1002-61, § 61.3(2).

*CDPHE Notice of Violation/Cease and Desist/Clean-Up Order Number SO-060306-1*, Plaintiff's

Exhibit F, Doc. 16-7, p. 4 ¶¶ 7, 11.  These letters accused New Salida of violating federal and

state environmental statutes by discharging fill material into the Arkansas River without a

permit.  A reasonable reading of these letters provides ample basis for United Fire's conclusion

that New Salida's act of *pollution* falls within the Total *Pollution* Exclusion.  Thus, United Fire

was justified in determining that the allegations in the underlying complaints fell squarely within

18

the terms of the TPE and that there was no factual or legal basis under which it might eventually be held liable to indemnify New Salida.

New Salida argues that a note by one of United Fire's claims adjusters stating, "I reread the memo Bill, and I am still confused, however, I would NOT recomend denying coverage on this claim, due to several reasons, but okay with me if you think this is correct approach" [sic], *Correspondence from Ron Reihmann* (Mar. 22, 2006), Plaintiff's Exhibit 5, Doc. 61-4, constitutes sufficient factual or legal basis on which coverage might be afforded. *Plaintiff's Brief in Support of Cross Motion for Partial Summary Judgment*, Doc. 57, p. 12. This mere scintilla of evidence, however, contradicted by the bulk of the evidence indicating that United Fire relied upon multiple definitive legal opinions finding that rock, dirt, and soil are contaminants within the meaning of the TPE and that the duty to defend had not been triggered, is insufficient to raise a genuine issue of material fact. *See Letter from Debra P. Deree, esq., Cain & Hayter LLP, to Bill Newman, Litigation Supervisor, United Fire & Casualty Co.* (May 25, 2006), Defendant's Exhibit X, Doc. 73, pp. 24-50; *Letter from Debra P. Deree to Bill Newman* (June 29, 2006), Defendant's Exhibit Y, Doc. 73, pp. 52-60; *Letter from Debra P. Deree to Bill Newman* (August 18, 2006), Defendant's Exhibit Z, Doc. 73, pp. 61-71; *Letter from John W. Grund, esq., Grund, Dagner & Nelson PC, to Adam B. Kehrli, esq., The Hustead Law Firm PC* (Jan. 26, 2009), Defendant's Exhibit AA, Doc. 73, pp. 72-78; *Letter from John W. Grund to Adam B. Kehrli* (Mar. 2, 2009), Defendant's Exhibit BB, Doc. 73, pp. 79-83.

As discussed above, the allegations in the complaints underlying New Salida's claim describe situations squarely within the plain meaning and scope of the TPE. New Salida has failed to adduce sufficient evidence to raise a genuine issue regarding the existence of any

factual or legal basis on which United Fire might be held liable to indemnify New Salida.

Accordingly, United Fire has met its burden and was not under a duty to defend or indemnify

New Salida for the losses incurred in the process of developing the Remediation Plan and

defending the CDPHE's enforcement action.

In the alternative, even if the TPE applied to bar its recovery, New Salida argues it is

entitled to recover under the doctrine of Reasonable Expectation of Coverage.  Under this

doctrine:

> An insurer who wishes to avoid liability must not only use clear and unequivocal
> language evidencing its intent to limit temporary coverage, but it must also call
> such limiting conditions to the attention of the applicant.  Absent proof of such
> disclosure, coverage will be deemed to be that which would be expected by the
> ordinary layperson . . .

*Sanchez v. Conn. Gen. Life Ins. Co.*, 681 P.2d 974, 977 (Colo. Ct. App. 1984) (quoting *Collister*

*v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1350 (1978)).  Based on the testimony of its retained

expert and the deposition of its President, Ralph Scanga, New Salida argues that it reasonably

believed that its CGL policy covered the claim in question.  *Plaintiff's Brief in Support of Cross-*

*Motion for Partial Summary Judgment*, Doc. 61, pp. 17-18.  The doctrine of Reasonable

Expectation of Coverage, however, is only intended to supplement, not replace the general rule

that insurance policies are to be interpreted according to the principles of contract construction.

*Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1265 (Colo. Ct. App. 1996).  Accordingly, where the

terms of the policy are unambiguous, it is inapplicable.  *Lincoln Gen. Ins. Co. v. Bailey*, ___ P.3d

___, 2009 WL 1331094, * 3 (Colo. 2009) (citing *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1028

(Colo. Ct. App. 2002)) .

As discussed above, the application of the TPE in this instance is not ambiguous.

Therefore, the reasonable expectations of New Salida are irrelevant.  As the policy issued to New Salida was unambiguous, United Fire was under no duty to inform New Salida of the policy's terms and limitations; on the contrary, New Salida was charged with knowledge of the policy's restrictions.  *See Spaur*, 942 P.2d at 1265; *Pete's Satire, Inc. v. Commercial Union Ins. Co.*, 698 P.2d 1388, 1391 (Colo. Ct. App. 1985).  Thus, New Salida's reasonable expectations argument fails.

### 2.  Insurance Bad Faith

New Salida also argues that United Fire breached its duty of good faith and fair dealing in denying its claims.  The tort of breach of duty of good faith and fair dealing in the insurance context is based on the parties' contractual duties.  *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 516 (Colo. 1996)*; Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984) (rev'd on other grounds by *Goodson*, 89 P.3d 409).  An insurer "cannot be held liable for damages for breach of a duty which it did not have in the first place." *Lira*, 913 P.2d at 517.  New Salida's argument relies in large part upon the contention that the TPE does not bar New Salida's claim for losses resulting from its discharge of fill material.  As discussed above, however, the TPE *does* bar New Salida's claims for coverage, and United Fire was not under any duty to defend or indemnify New Salida.   Accordingly, as there was no duty, there can be no breach and United fire cannot have acted in bad faith.

Even assuming that United Fire did have a duty to defend and indemnify New Salida, its failure to do so does not necessarily constitute bad faith.  New Salida must prove that United Fire's denial was unreasonable.  *See Farmers Group*, 691 P.2d at 1142.  To prevail, New Salida must "show the absence of any reasonable basis for denying the claim." *Id.*  United Fire's

retention and reliance on outside counsel who concluded that there was no duty to defend constitutes a reasonable basis for denying New Salida's claim.  Plaintiff has failed to produce sufficient evidence that United Fire acted in bad faith in denying its claim.[7]  Thus, New Salida's claim for Insurance Bad Faith fails even if United Fire breached its duty to defend and indemnify New Salida.

### 3.  Colorado Unfair Claims-Deceptive Practices Act

New Salida also asserts that United Fire's rejection of its claim for damages violates the Colorado Unfair Claims-Deceptive Practices Act ("UCDPA"), C.R.S. §§ 10-3-1101, *et seq.* (2009).  The UCDPA establishes "standards for when the *commissioner of insurance* may find that an insurance company is engaged in an unfair or deceptive trade practice," *American Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004) (emphasis added); with limited exceptions, however, it does not create a private right of action.  C.R.S. § 10-3-1114 (2009) ("Except as provided in sections 10-3-1115 and 10-3-1116, nothing in this [Act] shall be construed to create a private cause of action based on alleged violations of this [Act] . . ..").[8] Because there exists no private right of action under the UCDPA, New Salida's argument that a ruling on its UCDPA claim would be premature before the completion of discovery is irrelevant. Accordingly, United Fire is entitled to summary judgment on New Salida's UCDPA claim.

### ATTORNEY FEES

Under Colorado law, reasonable attorney fees may be awarded, either upon the motion of

---

[7] New Salida's assertion that correspondence by one of United Fire's claims adjusters expressing doubt as to whether the TPE applies constitutes "bad faith" is insufficient to raise a genuine issue of material fact.  *See supra* p. 19.

[8]  Though New Salida asserts claims under §§ 10-3-1115 and 10-3-1116, as discussed *supra* at pp. 6-9, those statutes do not apply to the actions of United Fire in this case.

either party or *sua sponte*, in a civil action "against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." C.R.S. § 13-17-102(2), 102(4) (2009).[9] "Lacked substantial justification" is defined in the statute to mean "substantially frivolous, substantially groundless, or substantially vexatious." C.R.S. § 13-17-102(4). A claim is "frivolous" "if the proponent can present no rational argument based on the evidence or law in support of that claim." *Rael v. Taylor*, 876 P.2d 1210, 1228 (Colo. 1994) (quoting *W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984). The determination that a claim is substantially groundless, frivolous, or vexatious "is within the discretion of the trial court, whose decision will not be disturbed on appeal if supported by the record." *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 504-05 (Colo. Ct. App. 2003).

Based on the clear statutory language and the existence of cases clearly interpreting the relevant law, it is questionable whether New Salida's claims under the UCDPA were based on any rational argument. Accordingly, I order New Salida to show cause why this court should not award reasonable attorney fees to United Fire for the costs involved in defending the UCDPA claims. In showing cause, I draw New Salida's attention to the statutory factors enumerated at C.R.S. § 13-17-103(1)(a-h).

For the foregoing reasons, Defendant's Partial Motion to Dismiss (Doc. 106) and Motion for Summary Judgment (Doc. 53) are granted in full. Plaintiff's Motion for Partial Summary Judgment (Doc. 60) is denied. Judgment shall be entered in favor of the Defendant. Plaintiff

---

[9] Section 13-7-102 applies where, as here, a claim is brought pursuant to this court's diversity jurisdiction. *Lorillard Tobacco Co. v. Engida*, 556 F. Supp. 2d 1209, 1215 (D. Colo. 2008).

shall show cause why it shall not bear Defendant's costs in defending Plaintiff's UCDPA claims.


Dated:  December 18, 2009

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE
